When you're ready, Counsel. Good morning. Thank you. May it please the Court, Lee Tucker for Mr. Pedro Garduno-Diaz. I will again attempt to reserve two minutes for rebuttal. I do have a clock. Thank you. So I wanted to turn to the point raised by Judge Sessions regarding B-2, which I think is fundamental and excellent. And B-2 is referenced in the opening brief. And in answer to the question about whether the magistrate judge, well, it's clear he did not fulfill that in open court. What's interesting, and I think a cause for additional concern, as referenced in the briefs and as demonstrated in the excerpts of record, he made the B-2 a vowel not at the hearing but in his report and recommendation. So in the R&R, he avowed that Mr. Garduno, this was true for both cases, that Mr. Garduno was competent to plead, was pleading voluntarily, understood all of the rights, understood the sentencing guidelines, et cetera. And there's just nothing in the record to support that. So that, of course, puts the district court judge in a very difficult position. The district court judge accepted the R&R. There were no objections, accepted the R&R. And surely we don't expect the district court judge to have to go get a transcript to make sure that the representations in the magistrate judge's report and recommendation are accurate. So I think B-2 just clearly was not complied with here and alone is reason to vacate the plea of guilt, the conviction. So this case is also coming up to us on plain error? Yes, Your Honor. Let me ask you the same question. So we've got two lawyers there, one from each side. How about the potted plant from your side? Yes. What's going on here? Well, that's a good question. At some point, it's the job of the lawyers to protect the judge from the judge's mistakes. I agree, Your Honor. And I cannot speak to the practice of the attorney in this case, but I agree with Your Honors. It appears that this has been a pattern of practice in which attorneys both for the defense and the government have been acquiescing. I don't know how many other cases would be in the pipeline. I suspect that many of these cases, if the plea agreement is not rejected in particular, probably just go through the whole procedure and don't undergo any scrutiny. In the case of Mr. Fuentes Calvez, there was an Anders brief filed, which the court thankfully reviewed and rejected. It does appear that all parties have allowed this to continue. I would hope that defense counsel in these cases are at least themselves confident that their client is competent in pleading voluntarily. However, we don't have assurances of that from the record. And certainly in the case of Mr. Fuentes Calvez, as you know, we've alleged ineffective assistance of counsel at sentencing, and there's nothing to inspire confidence of full counseling and assessment of their client's complete understanding. You may not know the answer to this, but I'm trying to get a sense of sort of the practical aspects of this. How many of these defendants in this situation with illegal reentry are represented by private counsel? How many by CJA counsel? How many by the public defender? To the best of my knowledge, so generally speaking, virtually none of the 13 to 26 illegal reentry cases have private counsel. The vast majority have CJA appointed counsel. Occasionally the federal defender will also be involved in those cases, but typically our practice is to panel out the 13 to 26 cases in recent years. And I think these two cases are CJA attorneys? That's correct, Your Honor. One of the interesting things about both of these particular cases is that when the general colloquy in a change of plea comes to where a defendant would begin to talk so that you actually knew what the defendant was saying or what he was thinking, that is, you know, how long have you been in school? What is your occupation? What is your psychological condition? Have you been hospitalized for one thing or another? That's when all of a sudden the plea colloquy is stopped, at least according to Rule 11, and they go right to the questions which require just a yes or no answer. So in both these cases the pleas were very fast because the only questions that were asked of the defendant are the ones that can be responded with yes or no, which means, of course, the judge has no sense of the level of skill or intelligence of this particular defendant. It's interesting that they stop right where the defendant would ordinarily be required to say something. That's what's omitted. That's just an observation. Well, it's absolutely true. There's nothing to indicate anything other than the fact that the defendant is able to understand the signaling that a yes answer is what's expected. And Judge Fletcher mentioned earlier the en masse proceedings. You know, we have the streamlined proceedings still, and I can say that I've seen many cases where those plea proceedings go through. It's very similar. It's all yes, yes or no questions, yes or no, yes or no, and then guilty at the end. And there have been numerous instances where in a subsequent case involving a particular defendant, it comes to light that there are language deficiencies so extreme as to render the defendant incompetent, and yet they were able to go through the entire proceeding with the yes or no. It just doesn't provide the reviewing court with the necessary record to feel comfortable and assured that Rule 11 and the Constitution have been complied with. I will reserve my time unless the court has additional questions. Okay. And you've got quite a bit of time then. Thank you. May it please the Court, again, I'm Tanya Miller from the District of Arizona, appearing for the government in this case as well. Here, too, the Court should affirm because the defendant has failed to meet his burden of showing some evidence in the record to indicate that some error flowed from the plea colloquy in this case. Well, it's pretty obvious in the illegal reentry cases that the government is going to be able to prove illegal reentry. So in that sense, well, we pretty much know what the outcome of the case is going to be. There's going to be an adjudication of guilty, whether based on a plea or whether based on going to trial. I get all of that. But is that all that we – I mean, is that the end of the story in the sense of what the government needs to show? I mean, just because I'm going to get convicted if I go to trial doesn't mean I want to plead. Well, Your Honor, I believe that it was the Supreme Court in the Vaughn case which pointed out that there are a number of factors for you, the reviewing court, to consider when making the decision about whether plea in error resulted in a situation such as this. As Your Honor pointed out, the strength of the government's case is one of the factors to consider. And in this case, we know from the pre-sentence report that the government's case was strong and the defense has presented no evidence that there was any defense there, too. There are only two options, Your Honor. I'm sorry to interrupt. Well, no, no, you're acutely sensitive. Do we get to consider on the plea in error review the egregiousness of the error? Your Honor, I would submit that the court must find that error occurred. I suppose I don't necessarily understand the import of the question that you're asking. Well, we know that there was an error. The government makes a fairly strong, intuitive argument that one way or the other, this defendant and the other defendant were going to plead. The question was when were they going to plead, under what conditions were they going to plead, was there going to be a recommendation as to sentence that was part of the plea agreement. I mean, merely pleading doesn't tell you very much because you plead based on conditions. It's an open plea. It's a plea with recommendations. There are all kinds of different pleas. So for the government merely to say, well, it's pretty clear he would have pled sooner or later, assuming that the error was an error but fairly minor, and the government says, well, he was going to plead anyway, is that a different case from this one where the error was egregious? Or does the government merely need to show, no matter how egregious the error, that he was going to plead anyway? Yes, Your Honor. That is the government's position. And that is what the Supreme Court, it is our position that that is what the Supreme Court said and that didn't get submitted to us. And would you have the same position if the only question had been how do you plead? And he pled guilty. End of story. Is the government taking the same position that it's still a harmless error under the plain error standard? Well, Your Honor, I do believe that the plain error review standard does apply. No, I ask you a question. Assuming that, and this is now not what happened, but assuming that the question was how do you plead, the defendant says, guilty. No more questions. Do you make the same analysis under plain error? You do, however, in such a case, Your Honor, the defendant would likely be able to show that he did not understand the extent of what it was that he was doing. However, in both of these cases, that is not the case because there's adequate record evidence to indicate that the defendant did understand all of the circumstances. So tell me in this case what evidence you're pointing to that should tell us that the defendant did, in fact, understand. Well, the strongest evidence is that the defendant, after having multiple opportunities to discuss his case as well as the guidelines and the district courts, I'm sorry, in this case, the defendant was given the opportunity to withdraw his guilty plea after the district court had informed him that it was going to depart upwards from the guidelines, the basis therefrom, and actually had told him that it was going to impose a 40-month sentence in this case. And the defendant elected not to. And the judge says, I'm inclined to do this. Do you want to withdraw the plea? Correct, Your Honor. And then he was given an opportunity to consult with counsel about that, and the defendant elected not to. And on the record, the defense indicated that what he would like to do is to proceed and be sentenced. And then the district court imposed the sentence that it promised that it would. That is the strongest evidence, Your Honor, that no error flowed from any lack of advisement at the change of plea colloquy. And I realize I'm cross-contaminating. What's the evidence in the earlier case that we just heard? Well, in the earlier case, it is the same. The defendant, there were actually three hearings in total where the defendant was informed by the district court of the fact that the guidelines were merely advisory, that he intended to depart upwards, that he had to consider other statutory factors, including deterrence, and it was crafting a sentence therefrom, and also that he had multiple opportunities over the course, I believe it was, of those 19 days to consult with counsel about the situation. And then at the final sentencing hearing, the defense represented that what the defendant wanted to do, despite all these representations from the court, was to maintain his guilty plea and that he did not want to withdraw it. And in either or both of the cases, did the judge hear from the defendant or merely from the defendant's lawyer? In the first case we discussed today, Mr. Fuentes-Galvez, he did actually hear from the defendant. I cannot recall at the moment whether in the second case whether the defendant himself addressed, but I do know the defense counsel did address the court in that case. So when you bring up plain-error review, and that's what we're here on, you can follow this train of thought because it's really much more complicated than just a plain-error review. Because of B-2 and because of the Due Process Clause, when B-2 says a judge has a responsibility to ensure that voluntariness and knowledge are on the record, and if the judge cannot be assured that there is sufficient record of knowledge and voluntariness, the judge may not accept the guilty plea. It's a totally different concept than whether the defendant knew or understood, et cetera. This is a responsibility on the judge. And when you look at the transcript here, this judge accepted a change of plea when, in fact, there was no disclosure about the makeup of the defendant, about what he knew or what he had taken, whether he was on drugs or not on drugs, or how far he had been in school. There was nothing about coercion or promises that were made to him. Nothing which would show knowledge or voluntariness. And so then when you look at B-2, you say a judge should never have taken this plea. So as a result, that's a little different than plain-error review, which focuses upon the defendant. Here, you know, I've done thousands of these. I know that my responsibility is to check to see if it's knowing and voluntary. And if I haven't done that, I can't take that plea. And so that is another issue here in this particular case, which is separate and apart from plain-error review, isn't it? Well, Your Honor, taking it as separate and apart, as you've asked, I would submit that actually the record does contain evidence to indicate that the plea was voluntary, in this case and in the other case. In both cases, the magistrate explicitly asked the defendant, are you doing this voluntarily? And there's a statement from the defendant on the record that he is. And as you noted, combined in that question, there was also the question as to whether or not he was doing this because he was guilty. And the defense has presented no evidence to suggest that the motivation for doing so was ever a threat or his mental condition was unsound at that time. Additionally, as I pointed out, under oath, the defendant asserted on the record that he had reviewed in his native language the plea agreements. In both cases, the defendants did. And within those plea agreements, there are avows that he has not had any medication or is otherwise under the influence such that he wouldn't understand that was what he was doing, that he was pleading guilty. And there is also explicit avows embedded in there that he is not pleading guilty because of threat or duress or for reasons of other promises which are not contained in the plea. So is your position that we can look at the writ? Does it have to be oral from the judge to confirm it? Or can we assume that because it was in the written document that that's enough? It would be my position that if the magistrate judge had not asked the defendant at the outset if he had reviewed the plea agreement and ascertained that he had also submitted a signature to it and engaged in that prior discussion about the plea agreement, that the court should not consider the contents of the plea agreement. But it did happen in this case. And so that the court can consider it because to not consider it would be to disavow those earlier representations which were made under oath. Just to make sure I understand the argument, you're not arguing that the Rule 11 colloquy may be dispensed with because the defendant has said, well, I've read all of this plea agreement stuff and I understand it. You're just saying that Rule 11 was still violated, but this goes to the harmlessness of the error? Correct, Your Honor. Okay. Thank you. You've saved some time. Thank you. Yes, thank you. Yeah, and I'll start where Judge Fletcher just left off. Exactly. There is a reason why we have the required Rule 11 colloquy in addition to any plea agreement. It is so that the judge can determine in open court all of the requisite due process and Rule 11 requirements. The plea agreement is insufficient. And particularly, I don't also want to cross-contaminate the cases too much, but in the case of Mr. Fuentes, this is a man in his 40s who had four years of primary schooling when he was a child in El Salvador and has since gone through a very traumatic life in a war-torn country with the death of his father, with recruitment into the military, 30 years of post-traumatic stress disorder, anxiety, and depression, 17 years of psychiatric medical treatment. There is quite a bit to give us concern on those particular facts as to his competence and his understanding. And again, unfortunately, we cannot depend on a vowel by itself of having reviewed a plea agreement, which is quite complicated. These legal concepts are quite complicated that someone understands these rights. Second, I would like to touch on, again, go back to the B-2 argument Judge Sessions has been making, which I think is absolutely correct. And it occurs to me, tying this back into the arguments we've presented, that one other consideration would be for the court to use its supervisory role to decide an appropriate course of action here. Because really allowing these guilty pleas to stand, these convictions to stand, when they were based on plea colloquies that are so flawed, would render Rule 11 and due process meaningless and would, you know, when I was speaking about this case with my colleagues, one of them said, and I said, oh, can I use that line? And she said, sure. It's like spitting on Rule 11. And I don't mean to be too colorful, but it really is. It really is just saying, hey, it doesn't really matter. And I feel that the court fully understands these issues. I'm happy to answer any other questions, but I do request in the case of Mr. Gardino-Diaz and Mr. Fuentes-Galvez that the convictions be vacated. Okay. Thank you very much. The second of the two cases now, United States v. Gardino-Diaz, submitted. Both cases submitted. Thank both sides for your helpful arguments. Thank you.
judges: W. Fletcher, R. Nelson, Sessionsiii